# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                                                                     Case No. 21-31026-WRS
                                                                                                             Chapter 13

KIMBERLY HOPE ARNETT,

  Debtor.

_____

In re                                                                                                              Case No. 21-31053-WRS
                                                                                                              Chapter 13

LENTONIUS FARYETT SMITH,

  Debtor.

## MEMORANDUM DECISION

These two Chapter 13 cases came before the Court for evidentiary hearings on TitleMax's Objections to Confirmation of the Debtors' Chapter 13 Plans, on October 20, 2021. For the reasons set forth below, the objections are overruled and the Plans are confirmed as filed.

### I. Facts

#### A. Kimberly Hope Arnett
#### Case No. 21-31026

Kimberly Arnett filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on June 14, 2021. (21-31026, Doc. 1). Arnett owns a 2013 Kia which she values at $6,425.00. The Kia is subject to a security interest in favor of TitleMax of Alabama, Inc., securing an indebtedness in the amount of $3,500. (Doc. 12). Arnett's Plan proposes to pay TitleMax $3,500 over the life of her plan in monthly installments of $125.00 at an interest rate of 3.25%.

TitleMax objects to confirmation of Arnett's Plan on the grounds of bad faith and fraud. (Doc. 20). TitleMax offered into evidence copies of "Pawn Ticket and Security Agreements" dated March 24, 2021, and June 14, 2021. (TitleMax Exhibits 8, 9). The March 24 contract states an Annual Percentage Rate of 133.71% and an amount financed of $4,825. The March 24 contract matured on April 23, 2021, when the total amount came due. Arnett did not pay the amount due on April 23. On June 14, 2021, Arnett renegotiated her debt, paying interest and other charges due, and refinancing the remainder on a new contract. (TitleMax Exhibit 9). The new contract, like the previous one, bore an annual percentage rate of 133%. In neither the March 24 or the June 14 contracts did Arnett receive any new money from TitleMax. Arnett had borrowed the money earlier and rolled over several contracts until we arrived at the state of affairs existing on June 14. Titlemax did not offer any other contracts into evidence and its representative could not testify as to when Arnett first borrowed the money. Thus, it is unknown how many times the contract rolled over after Arnett first borrowed the money until she filed bankruptcy, nor is it known how much interest was paid prior to the bankruptcy filing. Arnett testified that TitleMax offered to advance additional money to her on June 14; however, she refused the offer.

The TitleMax exhibit shows that the June 14 contract was entered into at 11:15 a.m. (TitleMax Exhibit 10). The Court's records show the Arnett filed her petition in bankruptcy about five hours later on the same day, at 4:49 p.m. on June 14, 2021. (Doc. 1). The TitleMax contract at Paragraph 22(j), states as follows: "You are not a debtor in bankruptcy. You do not intend to file a federal bankruptcy petition." (TitleMax Ex. 8).[1]

Arnett testified at the evidentiary hearing. She admitted having spoken to counsel prior to the time she signed the TitleMax contract and had in mind filing a petition in bankruptcy. The

---

[1] All of the contracts offered into evidence by TitleMax in both cases were on the same form.

Court heard Arnett's testimony and had the opportunity to observe her demeanor. In addition, the Court has reviewed the file in this case and has reviewed the Schedules, Statements and Chapter 13 Plans. The Court further notes that it does not appear that Arnett has filed bankruptcy before. The Court finds that she did not act in bad faith in filing her petition in bankruptcy.

### B. Lentonius Faryett Smith
### Case No. 21-31053

Lentonius Faryett Smith filed a petition in bankruptcy on June 19, 2021. (21-31053, Doc. 1). He filed a Chapter 13 Plan that reflected an indebtedness due TitleMax in the amount of $1,850.00, secured by his 2007 Saturn, which he valued at $3,037. The Plan proposes to pay the indebtedness at a rate of $50 per month, at an interest rate of 5.25%. (Doc. 21). TitleMax objects to confirmation, arguing bad faith and fraud. (Doc. 22).

TitleMax offered into evidence pawn contracts dated May 7, 2021 and June 17, 2021. (TitleMax Exhibits 1 and 2). The interest rate that TitleMax charged Smith on both of the contracts was an eye-popping 206.71%. Smith did not receive any new money from TitleMax on either May 7 or June 1; rather, he was rolling over an existing indebtedness on both occasions. No evidence was offered as to when Smith first borrowed the money, how many times the contract had rolled over, or how much interest Smith had paid. The form of the contracts signed by Smith was identical to those signed by Arnett. Smith's contracts therefore contained the same form Paragraph 22(j) representations about filing for bankruptcy. Smith filed bankruptcy on June 19, 2021, two days after the June 17 rollover of his indebtedness to TitleMax. (Doc. 1). The Court heard Smith's testimony and observed his demeanor at the October 20, 2021 evidentiary hearing. The Court finds that Smith filed his bankruptcy petition in good faith.

## II. LAW

### A. Jurisdiction

This Court has jurisdiction to hear this proceeding pursuant to 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. § 157(b)(2)(L). This is a final judgment.

### B. Paragraph 22(j) of the TitleMax contract is unenforceable as it is contrary to public policy.

TitleMax centers its objection to confirmation of both Chapter 13 Bankruptcy Plan on Paragraph 22(j) of its form title pawn contract, which states as follows: "You are not a debtor in bankruptcy. You do not intend to file a federal bankruptcy petition." (Doc. 20, 21-31026–Arnett; Doc. 16, 21-31053–Smith) (Exhibit A for both documents).

A contract provision purporting to waive a party's right to discharge a debt in bankruptcy is unenforceable because such a provision contravenes public policy. "It is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code . . . This prohibition of prepetition waiver has to be law; otherwise, astute creditors would routinely require their debtors to waive." *The Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002). In *Huang*, a borrower entered into an agreement with the Bank where he agreed not to file bankruptcy, and if he did, not to oppose the Bank's effort to seek relief from the automatic stay, and that any debt owed the Bank would not discharge in bankruptcy. *Id.*, at 1176 (paraphrasing contract). The lawyers for the Bank were well aware that it had a problem with the enforceability of its contract, so they threw in the following clause for good measure: "Defendants are aware that there may be case law which holds that such pre-petition waivers of relief from stay are unenforceable and agrees that in any bankruptcy, the Defendants will be deemed to have rejected and disavowed such case law." *Id.* at 1177. The Bank's effort to cause its borrower to waive his right to file bankruptcy

and to "disavow" any case law that says otherwise failed. The Ninth Circuit in *Huang* did not permit the Bank's gambit. *See also Klingman v. Levinson*, 831 F.2d 1292, 1296 n. 3 (7th Cir. 1987) (stating in dicta that "for public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy").

Reported case law overwhelmingly supports the proposition that a debtor may not contract away his right to relief under the bankruptcy code. *Huang*, 275 F.3d 1173; *Klingman*, 831 F.2d 1292; *Orix Capital Markets, LLC v. Kobernick,* No 8-CV-1458, 2009 WL 7808949 , at *7 (S.D. Texas May 89, 2009) (Holding that waiver of automatic stay in promissory note not enforceable, as all promissory notes would contain such provisions); *In re Weitzen*, 3 F.Supp. 698 (S.D.N.Y. 1933) (Stating that "it would be repugnant to the purpose of the Bankruptcy Act to permit the circumvention of its object by the simple device of a clause in the agreement."); *Mayo v. Jackson (In re Jackson)*, No. 20-5030, 2020 WL 7634502, at *3 (Bankr. E.D. Ky. Dec. 18, 2020) (Holding that prepetition discharge waivers violate public policy and are unenforceable.); *Reynolds v. Eckerd (In re Eckerd)*, No. 18-4092, 2019 WL 5250774 (Bankr. E.D. Tex. Oct. 16, 2019) (Stating that "pre-petition waiver of the benefits of bankruptcy is contrary to federal law and therefore void.") (citing *Huang)*; *Laski v. Gawrys (In re Gawrys)*, No. 14-5006, 2015 WL 2198050, at *2 (Bankr. N.D. Ga. May 8, 2015); *EFS, Inc. v. Mercer (In re Mercer)*, No. 13-3031, 2013 WL 3367253, at *4 (Bankr. M.D. Ala. July 5,2013) (Stating that pre-petition waivers of dischargeability are not enforceable.); *Torres v. Nachon-Torres (In re Nachon-Torres)*, No. 12-1130, 2013 WL 793246, at *2 (Bankr. S.D. Fla. Mar. 4, 2013); *The Infinity Group, LLC, v. Lucas (In re Lucas)*, 477 B.R. 236, 246 (Bankr. M.D. Ala. 2012); *Rice, Heitman & Davis, S.C. v. Sasse (In re Sasse)*, 438 B.R. 631, 635 (Bankr. W.D. Wis. 2010) (Stating that "pre-petition waivers of discharge or a promise not to file bankruptcy are not enforceable").

Strictly speaking, the TitleMax contract provision is not a waiver of discharge but rather it is cast in the form of a representation that the borrower is not going to file bankruptcy. In *Sasse*, the Court stated that:

> A prepetition waiver of discharge "undermines the purpose of the Code." *Cole*, 226 B.R. at 654. The same must be said of a prepetition promise not to file bankruptcy at all, which is essentially the same as a promise to forego the primary benefit afforded by the filing. *Huang*, 275 F.3d at 1177 (debtor's promise "not [to] enter bankruptcy" was unenforceable). Logically, it seems inappropriate to find that a debtor's breach of a promise not to seek a discharge could serve as the grounds for a fraud claim when the debtor was simply exercising a statutory right.

*Sasse*, 438 B.R. at 647. The Court in *Sasse* correctly noted that a promise not to file bankruptcy is functionally indistinguishable from a stipulation of nondischargeability. In both instances, a creditor is attempting to draft an contract to deny a borrower the statutory benefits of bankruptcy. The policy supporting the rule that stipulations of nondischargeability are not binding equally supports the rule holding that contact provisions such as that in the TitleMax contract are not enforceable.

In a bankruptcy case out of the Central District of Illinois, a contract provision that is nearly identical to the one in issue here was involved. "You further represent and warrant that you are not a debtor under any proceeding in bankruptcy, insolvency, or reorganization and that you have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code." *I Need Cash, Inc., v. Powell (In re Powell)*, No. 09-8007, 2011 WL 5101753, at *1 (Bankr. C.D. Ill. Oct. 27, 2011). The Court in *Powell* concluded that such a contract provision was "entitled to no weight whatsoever." 2011 WL 5101753, at *4. The Court found that such contract provisions "undermines the purpose of the Code." *Id.* (citing *Huang, Sasse,* and others).

TitleMax argues that its contract provision does not run afoul of public policy because a mere acknowledgment as to a party's intentions relating to a future bankruptcy petition is fundamentally different than a prepetition waiver of discharge or promise not to file bankruptcy. TitleMax is mistaken. When faced with a similar acknowledgment, the court in *I Need Cash, Inc. v. Powell (In re Powell)* stated that a representation in a contract that a contracting party did not intend to file bankruptcy "is tantamount to a prepetition waiver of the right to a discharge in bankruptcy." 2011 WL 5101753, at *4 (C.D. Ill. Oct. 27, 2011) (citing *Klingman v. Levinson*, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987); *see also In re Marquardt*, 561 B.R. 715, 725 (Bankr. C.D. Ill. 2016) ("a representation of having no intention to file bankruptcy is entitled to no weight in establishing the dischargeability of a debt")).

In the cases at bar, TitleMax is attempting to manufacture a fraudulent inducement claim by weaponizing a breach of an unenforceable provision in order to prevent Arnett and Smith from availing themselves of the full protections of the Bankruptcy Code. Accordingly, the Court gives no weight to the provision regarding the Debtors' intentions as to filing bankruptcy contained in their pawn agreements. As such, TitleMax's assertion that the Court must enforce the pawn agreements immediately preceding the agreements at issue falls beneath its own weight. The Court finds that paragraph 22(j) of the pawn agreements is unenforceable as against public policy.

### C. The Plans proposed by Arnett and Smith were both proposed in good faith and not by any means forbidden by law

#### 1. General

TitleMax objects to confirmation of the Debtors' Plans on the grounds that the Plans are not filed in good faith. (21-31026, Doc. 20–Arnett) (21-31053, Doc. 16–Smith). The Bankruptcy

Code states that "[t]he court shall confirm a plan if– . . . (3) the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The burden is on the debtor to prove that her plan meets the statutory requirements. *In re Smith*, 196 B.R. 565, 569 (Bankr. M.D. Fla. 1996). In the cases at bar, the only objection to confirmation of either plan is "good faith" in accordance with § 1325(a)(3).

The leading case interpreting this provision is *Kitchens v. Georgia RR Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir. 1983). The Eleventh Circuit stated in *Kitchens* that "[a] comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal." *Id.* at 887. In *Kitchens*, the Eleventh Circuit set out 11 nonexclusive factors that Bankruptcy Courts should consider when making the determination of whether a plan is proposed in good faith.

The Court will analyze good faith here in the context of the 11 nonexclusive factors set out by the Eleventh Circuit in the case of *In re Kitchens*. As virtually all of TitleMax's argument centers on the tenth *Kitchens* factor–the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors, the Court will discuss that factor separately. In part 2, *infra*, the Court will discuss *Kitchens* factors 1-9 and 11. In part 3, the Court will discuss the tenth *Kitchens* factor.

### 2. *Kitchens* **Factors 1-9 and 11**

The Court now examines *Kitchens* factors 1 through 9 and 11 in the context of these two cases..

Case 21-31053    Doc 34    Filed 12/16/21    Entered 12/16/21 15:35:25    Desc Main
Document      Page 8 of 14

1. The amount of the debtor's income from all sources. In her schedules, Arnett reports that she has gross income of $3,225.82 and that her husband has $2,574.56 per month. (21-31026, Doc. 1, Sch I). Smith reports monthly income of $2,321.12. (21-31053, Doc. 1, Sch. I). Neither of these figures are inconsistent with a finding of good faith and no argument is made to the contrary.

2. The Living Expenses of the debtor and his dependents. The Court has examined Schedule J–Your Expenses–in both cases and finds nothing inconsistent with a finding of good faith. The living expenses of both Debtors is unremarkable. TitleMax makes no argument to the contrary on this point.

3. The amount of attorney's fees. The lawyers are both being paid the Court's presumptive or "no look" fee for Chapter 13 cases, which the Court finds is reasonable.[2]

4. The probable or expected duration of the debtor's Chapter 13 plan. Arnett's plan is proposed to take 58 months and Smith's plan is 48 months. Both terms are within the parameters set by the Bankruptcy Code for Chapter 13 plans and do not indicate bad faith.

5. The motivations of the debtor and their sincerity in seeking relief under the provisions of Chapter 13. Having heard the testimony of both Debtors, the Court finds that both Debtors are dealing with their finances in good faith. The only dispute from TitleMax centers on the fact that both debtors rolled over their contracts shortly before filing bankruptcy, which it contends is bad faith. This will be discussed in detail in Part 3 below. The Court finds that both Debtors were sincere in their dealings with the Court, the Trustee and their creditors.

---

[2] Compensation for debtor's attorney's is regulated 11 U.S.C. § 330, and Bankruptcy Rule 2016. The Court entered an Administrative Order on December 18, 2018, setting compensation for debtor's lawyers in Chapter 13 cases at $3,500 if the debtor's income is below median and $3,750 for above median income debtors. This fee is commonly referred to as the "no look" fee because the Court does not require a formal fee application, nor is further inquiry into the amount generally done.

6. The Debtor's degree of effort. The Court finds that both Debtors are working full time and that their Chapter 13 Plans represent their best effort to effectively reorganize their debts.

7. The Debtor's ability to earn and the likelihood of fluctuation in earnings. Both Debtors are employed on a full time basis and have been so for a number of years. There is no evidence that either Debtor is underemployed or that they could make significantly more money in another trade or occupation. Moreover, their earnings appear to be stable and that they should be about to fund their plans from their wages.

8. Special circumstances such as inordinate medical expenses. The Court did not see any evidence of any special circumstances which would make either case unworkable or not viable.

9. The frequency with which the Debtors have sought relief under the bankruptcy laws. The Court's record indicates that neither Debtor has filed bankruptcy before.

11. The burden which the plan's administration would place on the trustee. Neither plan contains voluminous non-standard provisions requiring excessive nor abnormal duties on the Chapter 13 Trustee; therefore, the administration of these cases would not place an undue burden on the Chapter 13 Trustee. Moreover, the Trustee does not object to confirmation of the plan.

Having reviewed 10 of the 11 *Kitchen's* factors, the Court finds nothing inconsistent with a finding of good faith. Next it will proceed to what it perceives is the heart of TitleMax's good faith objection.

### 3. The Tenth Kitchens factor–the circumstances under which the Debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors.

The gist of TitleMax's respective objections is that both Debtors signed contracts containing Paragraph 22(j), which states as "You are not a debtor in bankruptcy. You do not intend

to file a federal bankruptcy petition." TitleMax contends that by executing the contracts both Debtors misrepresented their intentions and that these misrepresentations disqualify them from meeting the good faith requirement of 11 U.S.C. § 1325(a)(3). As set out in part 2B, *supra*, the Court finds that Paragraph 22(j) of the TitleMax contract is against public policy and therefore unenforceable. With that in mind, the Court will examine the circumstances surrounding these contracts.

TitleMax is a maker of predatory loans at astronomical interest rates. Arnett's contract called for interest at 133% and Smith's was for 206%. In times past, contracts charging usurious interest rates were not enforced by the courts. *Larson v. State*, 266 Ala. 589 (1957) (holding that loans at interest rates between 700% and 272% were usurious and therefore void and unenforceable); *see also Nash v. State*, 271 Ala. 173 (1960).

TitleMax typically lends approximately 50% of the value of the vehicle to the borrower at rates of interest of 200% for a term of 30 days. At the end of the 30-day period, the total principal and accrued interest is due. Typically, the debtor will pay the accrued interest and roll over principal for another 30 days. That happened multiple times here in both cases.[3] If the borrower does not or cannot pay the accrued interest, the contract enters a second 30-day period. At the end of that second 30-day period, if the borrower does not pay the entire amount due, both principal, interest, and other charges, according to the contract, the borrower's interest in the automobile is forfeited to TitleMax. The Court is aware of instances where borrowers have paid interest totaling several times the value of their automobile only to lose their automobile when their circumstances do not permit them to pay up and roll over when their contract comes due. As the borrower's

---

[3] TitleMax did not bring evidence of how many times either Debtor rolled over his or her contract. To be sure, the Debtors might have helped themselves if that evidence had been provided.

Case 21-31053   Doc 34   Filed 12/16/21   Entered 12/16/21 15:35:25   Desc Main
Document    Page 11 of 14

interest forfeits under the contract, TitleMax is not required to conduct a commercially reasonable

sale and account to the borrower for any excess received over the amount of the debt.[4]

If a borrower's contract with TitleMax is current; that is, it is in the first 30-day period, the

Courts have held that a borrower may file a Chapter 13 bankruptcy petition, treat the indebtedness

due a secured claim to be paid, in full and with interest, over the life of the plan.[5] *TitleMax of

Alabama, Inc., v. Womack (In re Womack)*, No. 21-11476, 2021 WL 3856036 (11th Cir. Aug. 30,

2021); *see also In re Graham*, No. 21-11104, 2021 WL 4187953 (Bankr. S.D. Ala. Sept. 14, 2021).

Needless to say, TitleMax is dissatisfied with this state of affairs. If a debtor can pay TitleMax

through her Chapter 13 plan under *Womack*, then TitleMax, rather than continually relying on 30-

day contracts that roll over only if the borrower pays the accrued 100% or 200% interest, will be

paid the amount owed as of the petition date and only receive interest as provided by *Till v. SCS

Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951 (2004), over the life of the Chapter 13 Plan, which is

typically 36 to 60 months.

Based upon the testimony given by the Debtors at the October 20 evidentiary hearings, it

is not clear to the Court that the Debtors understood all of the legal technicalities involved here.

However, both were represented by competent counsel who were quite clearly attempting to use

the bankruptcy laws to save their clients' automobiles. It is apparent that both lawyers understood

that the Debtor's could afford to keep their automobiles only if they could pay the TitleMax

indebtedness over the life of their respective Chapter 13 Plans at a reasonable interest rate. That

is, they did not have the wherewithal to pay in full the TitleMax indebtedness, and needed to pay

---

[4] As these cases do not involve a forfeiture, it is not necessary for the Court to consider whether such a forfeiture would be contrary to law.

[5] Chapter 13 of the Bankruptcy Code permits a debtor to confirm a plan that proposes that a secured creditor such as TitleMax retain its lien and receive payments equal to its secured claim over the life of the plan, together with interest. 11 U.S.C. § 1325(a)(5). In *Womack*, the Eleventh Circuit rejected TitleMax's argument that the debtor's only alternative is to pay, in full, its indebtedness up front, rather than over time, with interest.

-12-

Case 21-31053    Doc 34    Filed 12/16/21    Entered 12/16/21 15:35:25    Desc Main
Document    Page 12 of 14

the debt over a period of time over a manageable interest rate. To do this, *Womack* dictates that the contract must be in the first 30-day period, that is not in default and subject only to redemption. On the contrary, it appears that TitleMax put Paragraph 22(j) in its contract to defeat the application of the bankruptcy laws and force a forfeiture of the debtor's automobile. If the TitleMax contract was enforced as written any borrower who filed bankruptcy would either have to pay TitleMax in full and up front or give up his automobile. Because the TitleMax contracts roll over every 30 days, and because the contract contains Paragraph 22(j), the Debtors will be acting in bad faith, according to TitleMax, if they file bankruptcy unless they can prove that they did not have any intention to file bankruptcy at the time of the latest roll over, which is necessarily no more than 30 days past. Thus, once a borrower had entered into a TitleMax contract, he could not file bankruptcy to save his car.

As discussed in part 2B, *supra*, paragraph 22(j) is unenforceable as it is against public policy. TitleMax cannot claim that the Debtors lack bona fides in their dealings with TitleMax because they violated an unenforceable contract provision. Moreover, TitleMax's bona fides are suspect. They will receive 100% of the principal due, plus interest at a reasonable rate. Instead, they seek interest of 100% to 200% backstopped by an onerous forfeiture provision. Accordingly, the Court finds that the tenth *Kitchens* factor weighs in the favor of the Debtors. The Court finds that Arnett and Smith have both filed their plans in good faith.

### III.  Conclusion

For the reasons set forth above, the Court finds that paragraph 22(j) of the pawn agreements between TitleMax and the Debtors is unenforceable as against public policy.  Further, the Court finds that both Arnett and Smith have carried their respective burdens of good faith under 11 U.S.C. § 1325(a)(3).  As such, the TitleMax objections to the Debtors' respective Chapter 13 Plans are overruled.  As TitleMax's objections were the only remaining impediments to confirmation of Debtor's respective Chapter 13 plans, both plans are confirmed.  The Court will enter an Order by way of a separate document.

Done this 16th day of December, 2021.

/s/ William R. Sawyer<br>
William R. Sawyer<br>
United States Bankruptcy Judge

c:     Debtor, Kimberly Hope Arnett
      Michael Brock, Attorney for Debtor, Kimberly Hope Arnett
      Debtor, Lentonius Faryett Smith
      Stephen L. Klimjack, Attorney for Debtor, Lentonius Faryett Smith
      Sabrina L. McKinney, Trustee
      All Creditors

-14-

Case 21-31053    Doc 34    Filed 12/16/21    Entered 12/16/21 15:35:25    Desc Main
Document    Page 14 of 14